## AUGUSTA BONDED PUBLIC WAREHOUSE COMPANY *v.* GEORGIA RAILROAD BANK *et al.*

1. On the facts of record and the findings of the jury thereon, a bank to which warehouse receipts were pledged as collateral security for notes of the pledgor company did not take the papers with notice of any

Appeal and Error, 3 C. J. p. 918, n. 23.
Trial, 38 Cyc. p. 1910, n. 23.
Warehousemen, 40 Cyc. p. 418, n. 53; p. 425, n. 17; p. 466, n. 75; p. 475, n. 20.

secret equity of the warehouseman, and acquired sufficient title to support an action against the warehouseman for the value of the goods stored by the pledgor company, after they had been fraudulently withdrawn from the warehouse, without surrender of the receipts, by the vice-president and general manager of that company. The receipts and indorsements thereon were admissible in evidence over the objections offered.

2. Refusal to submit to the jury to the jury a question approved by the attorneys for the parties did not furnish cause for reversal.

3. Omission, in the decree providing for a money judgment against the warehouseman, of a similar provision against the president of the company that stored the goods and pledged the warehouse receipts to the bank, was not error as against the warehouseman.

No. 5850.   MARCH 2, 1928.

Trover; equitable defense. Before Judge Franklin. Richmond superior court. December 8, 1926.

N. L. Willett Seed Company stored with the Augusta Bonded Public Warehouse Company certain cottonseed for which it received receipts, and later certain soy beans for which it received receipts. One form of receipt (see opinion, infra) was employed in both transactions. The articles stored were described in the receipts; and it was stated that they were received from the N. L. Willett Seed Company "on special storage," and that "the above articles will be delivered only on the surrender of this receipt, and payment of all storage charges." The receipts were indorsed, "N. L. Willett Seed Company by L. Ivey," and delivered in pledge by the indorser to the Georgia Railroad Bank as collateral security for certain notes executed by the pledgor to the pledgee. The bank made a demand on the warehouse company for the goods, which being refused, suit was instituted for their value. The defendant filed an answer in which, after responding to the allegations of the petition, it was alleged: (1) That the bank was the holder of certain shares of stock in a named corporation, deposited with it under the indorsement of N. L. Willett, to secure a line of credit including the debt for which it was alleged in the petition that the storage receipts were pledged; and if the bank holds the storage receipts, it is liable in equity and good conscience to account ratably with the defendant for the proceeds of the shares of stock; and that the defendant will be entitled to contribution from N. L. Willett as its cosurety, in the event any liability shall be found against it. (2) That N. L. Willett was president of the N. L. Willett Seed Company and its chief executive officer actively

engaged in operation of its business; that R. S. Guess, vice-president of the N. L. Willett Seed Co., requested defendant to deliver the goods to that company, stating that he would immediately surrender the storage receipts; that said statement was false and fraudulent, because at that time the receipts were held in pledge by the plaintiff, which fact was known to N. L. Willett; that, relying on such statement, the goods were delivered to the seed company, and that company, without the knowledge of defendant, sold the goods, and, instead of applying the proceeds of the sale to the debt for which the receipts were held as collateral, so that the receipts could be obtained and returned to the defendant, N. L. Willett spent the money arising from the sale for other uses of the N. L. Willett Seed Company, to the injury and damage of the defendant. The answer prayed for general relief; that N. L. Willett be made a party defendant; and that, if plaintiff should recover, defendant have a judgment over against Willett for the amount recovered against defendant.

Willett was made a party. He filed an answer which admitted the allegations of the original petition, and responded to the allegations in the answer of the warehouse company. The charges that Willett was the chief executive officer of the N. L. Willett Seed Company and knew that the receipts were in the hands of the plaintiff, and that the Willett Seed Company at the time of receiving the goods stated that it would produce the receipts, and that Willett participated in a fraudulent sale and disposition of the proceeds of sale of the goods, were denied. On the trial a special verdict was returned (on which a decree was entered), answering questions propounded to the jury, as follows: (1) "After the bankruptcy of the N. L. Willett Seed Company, did N. L. Willett pay off the obligations of N. L. Willett Seed Company, on which he was indorser, to the Georgia Railroad Bank? No." (2) "Did N. L. Willett, as an officer of N. L. Willett Seed Company, expend the money received by that company as the proceeds of the sale of the goods represented by the warehouse receipts described in plaintiff's petition? Yes." (3) "If you find that N. L. Willett, as an officer of N. L. Willett Seed Company, did expend the money received by that company as the proceeds of the sale of the goods represented by the warehouse receipts described in plaintiff's petition, was such expenditure of money

made by said N. L. Willett with fraudulent intent on his part, and with knowledge on his part that the money so expended by him was the proceeds of the goods represented by said warehouse receipts? No." The remaining questions and answers related merely to the amount of recovery.

The warehouse company, without moving for a new trial, filed a bill of exceptions in which the assignments of error were: (1) To the admission·in evidence of the receipts and the indorsements in blank thereon, over the objections (a) that the plaintiff as pledgee was offering them in evidence, and it appeared on the face of the papers that they were not indorsed to the plaintiff "as pledgee." (b) That they were not indorsed by N. L. Willett Seed Company. (c) That the purported indorsement, "N. L. Willett Seed Company" by Ivey, failed to show authority of Ivey to make the indorsement, and the evidence showed that Ivey was only a bookkeeper and was not authorized to make the indorsement. (d) That the indorsement in blank, if made with authority, was void, because the statute requires such indorsements to be made "to the pledgee," and not in blank. (2) The questions approved by the attorneys for the opposing parties, for submission to the jury, included the question, "Did N. L. Willett Seed Company pledge with Georgia Railroad Bank warehouse receipts described in its complaint, for the purpose of securing an indebtedness of N. L. Willett Seed Company to Georgia Railroad Bank?" The judge erred in refusing to submit this question to the jury. (3) In response to one of the questions propounded by the court, the jury found that N. L. Willett expended for the use and benefit of the N. L. Willett Seed Company all of the proceeds of the sale of the goods represented by the warehouse receipts, and that Willett did not actually know that he was spending this money. "Plaintiff in error does not complain of the findings of fact by the jury, but does complain and assign as error the judgment and decree of the court entered upon the findings of the jury," in that the judge upon those findings entered judgment against the plaintiff in error, and did not enter a judgment against N. L. Willett. In connection with this assign-ment of error a summary of evidence was set out as follows: "N. L. Willett was president of the N. L. Willett Seed Company. He was only a nominal president. The active conduct of the business was in the hands of R. S. Guess, who was vice-president and

general manager. Willett signed all checks of the company. He also signed most of the notes of the company. He was old, in bad health, and feeble. He took no interest in the actual conduct of the officers of the corporation, but left them almost entirely in the hands of Guess. He signed the checks by which the proceeds of the goods represented by the warehouse receipts sued on were expended. He did not know that these goods had been delivered to the seed company without surrender of the warehouse receipts, and did not know that they had been sold by the seed company, or that the checks which he signed were expending money received therefor."

　　*Lee, Congdon & Fulcher,* for plaintiff in error.

　　*Cumming & Harper* and *Hamilton Phinizy,* contra.

ATKINSON, J. One of the receipts issued by the warehouse company (both being in the same form) was as follows:

"Augusta Bonded Public Warehouse Company. Incorporated and bonded under laws of the State of Georgia. Augusta, Ga., 1/26/24.

"Received from N. L. Willett Seed Co. the following articles on special storage: 300/100 Sacks Cottonseed. Insured under policy held by Augusta Bonded Public Warehouse Co. Bu. 1.10 a bu. The above articles will be delivered only on the surrender of this receipt, and payment of all storage charges. All goods insured by this company, unless otherwise instructed in writing by storer. Loss in weight and damage by heating at owner's risk. [Signed] Augusta Bonded Public Warehouse Co. L. C. Doolittle, Manager.

　　"Indorsed: N. L. Willett Seed Co.　　　　By L. Ivey."

N. L. Willett was president of the said seed company. R. S. Guess was vice-president and general manager and in active control of the business of the company. L. Ivey was an assistant bookkeeper and accustomed to do the duties of an assistant cashier under the direction of Guess. After the cottonseed were stored Guess delivered the warehouse receipts to Ivey to be negotiated. Ivey prepared a note for $4400 to the Georgia Railroad Bank, signed thereto the name of the N. L. Willett Seed Company, and delivered for discount the note to the bank with the above mentioned warehouse receipts so indorsed as collateral security. The note so received was discounted; the proceeds were placed on

deposit in the bank to the credit of the N. L. Willett Seed Company, and thereafter were drawn out by the officers of that company in the regular course of business. Ivey immediately reported to Guess the making of the note and indorsement and delivery of the warehouse receipts in pledge; all of which was approved by him. A few days after storage of the cottonseed the N. L. Willett Seed Company delivered for storage certain soy beans to the said warehouse company, for which it received a warehouse receipt similar in all respects, except as to date and description of the articles stored, to the receipts issued for the cottonseed. This receipt was delivered to L. Ivey by Guess, for the purpose of being negotiated at the bank. Ivey prepared a note payable to the said Georgia Railroad Bank, to which N. L. Willett affixed the name of N. L. Willett Seed Company as maker. Ivey then carried and delivered to the bank the note with the warehouse receipt indorsed as the other warehouse receipts were indorsed, and the warehouse receipt was accepted as collateral, the note discounted, and the proceeds placed to the credit of the N. L. Willett Seed Company and subsequently were drawn out by that company. This transaction also was immediately reported by Ivey to Guess, and was approved by him. The proceeds of the note were drawn out by N. L. Willett Seed Company in the regular course of business.

1. In the circumstances above stated, the bank did not take the papers with notice of any secret equity of the warehouse company. The fraud practiced upon that company by the seed company came afterwards. The provision in the Civil Code (1910), § 2914, that "The title to cotton and other goods, wares, and merchandise stored in such bonded public warehouses shall pass to a purchaser or pledgee thereof by the delivery to him of the said warehouseman's receipt therefor, with an endorsement thereon to such purchaser or pledgee, signed by the person to whom such receipt was originally given by said warehouseman or by the endorsee of such receipt," is not an exclusive form for pledging warehouse receipts for a debt. The bank as pledgee acquired sufficient title, as against the warehouse company, to support an action against that company for the value of the cottonseed and soy beans, after they had been fraudulently withdrawn from the warehouse company by the N. L. Willett Seed Company without surrender of the warehouse receipts. The receipts and indorse-

ments thereon were admissible in evidence in connection with other evidence explanatory of the transactions referred to above.

2. The exception to the refusal of the judge to submit a stated question that had been approved by the attorneys for the opposing parties, which does not specify the ground of alleged error, is too indefinite to present any question for consideration other than because the opposing attorneys had approved the question. The approval of the attorneys of the question was not binding upon the court, and does not furnish ground for reversal of the refusal to submit the question.

3. In the light of the pleadings and the evidence, and the third question propounded to the jury and the answer thereto, to which there was no exception, the provision in the decree for a money judgment against the warehouse company, without a similar provision against N. L. Willett, was not erroneous as against the warehouse company.

*Judgment affirmed. All the Justices concur.*